# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF HENENFENT,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC.,<br><br>Defendant. | Case No. 1:23-cv-00354-KES-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING HOLDING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS IN ABEYANCE PENDING A SUMMARY TRIAL<br><br>(ECF Nos. 9, 16, 17, 21)<br><br>**TWENTY-ONE DAY DEADLINE** |

Currently before the Court is Defendant LG Electronics U.S.A., Inc.'s ("LG") motion to compel arbitration and, in the alternative, motion to dismiss Plaintiff Jeff Henenfent's ("Plaintiff") individual and class representative claims.  Now that a District Judge has been assigned to the instant action, the Court hereby issues its findings and recommendations.  For the following reasons, the Court recommends holding LG's motion to compel arbitration and motion to dismiss in abeyance pending a bench trial or equivalent evidentiary proceeding before the assigned District Judge, absent consent by all parties to Magistrate Judge jurisdiction.

/ / /

/ / /

/ / /

1

# I.

## BACKGROUND

### A.   Factual Allegations in Plaintiff's Unverified Complaint

In September 2021, Plaintiff purchased an LG model LRSOS2706S refrigerator ("Refrigerator") from Home Depot.  (ECF No. 1 ("Compl.") ¶ 14.)  The Refrigerator is equipped with a Craft Ice Maker, which creates custom types of ice, including large balls of slow-melting ice ("Craft Ice").  (Id. ¶ 47.)  Plaintiff alleges he purchased the Refrigerator specifically for the Craft Ice feature.  (Id. ¶¶ 16, 23.)  Prior to purchasing the Refrigerator, Plaintiff alleges he visited the LG website.  (Id. ¶ 15.)  Other than the agreed upon price of the Refrigerator, Plaintiff maintains he never saw, agreed, assented, or consented to any agreements by LG prior to or at the time of purchase.  (Id. ¶ 21.)  Plaintiff alleges he reasonably expected that the Refrigerator "was accompanied by a manufacturer's warranty of at least a year in duration but did not confirm his expectation or review the warranty manual prior to or at any time after purchase."  (Id. ¶ 21.)  Plaintiff simultaneously alleges that he "relied on the existence and length of the express warranties in deciding whether to purchase the refrigerator."  (Id. ¶ 115.)  Plaintiff also avers that LG's "warranties became part of the basis of the bargain between the parties…."  (Id. ¶ 123.)

Plaintiff's Refrigerator was delivered to his home by Home Depot's delivery service in late September 2021.  (Id. ¶ 18.)  Plaintiff alleges the delivery personnel removed the Refrigerator from its packaging and disposed of the packaging prior to installation.  (Id. at ¶ 19.)  Plaintiff claims the delivery personnel also removed all internal packaging and any stickers LG may have placed inside the Refrigerator.  (Id. ¶ 20.)  Plaintiff alleges he did not observe any stickers on the inside or outside of his refrigerator.  (Id.)

In November 2021, the Craft Ice Maker began making noises and leaked water into the freezer compartment.  (Id. ¶ 22.)  Plaintiff alleges he called LG Support using a phone number he found on the internet.  (Id. ¶ 24.)  After unsuccessfully troubleshooting over the phone, LG sent a technician to Plaintiff's home, who installed a new Craft Ice Maker in December 2021.  (Id. ¶¶ 25-26.)  By July 2022, Plaintiff alleges the Craft Ice Maker again stopped making Craft Ice.  (Id.

¶ 27.)  At Plaintiff's request, LG sent another technician but "warned that Plaintiff's limited warranty was about to expire," and Plaintiff would need to purchase an extended warranty through a third party to cover future repairs.  (Id. ¶¶ 28-29.)  Plaintiff purchased the extended warranty, and a repair technician installed a new Craft Ice Maker in August 2022.  (Id. ¶¶ 30, 32.)  By December 2022, Plaintiff alleges the Craft Ice Maker stopped making Craft Ice and Plaintiff "contacted LG for another warranty repair" but was advised he needed to place his claim under the extended warranty.  (Id. ¶¶ 33, 35.)  In February 2023, a repair technician installed a replacement Craft Ice Maker.  (Id. ¶ 38.)  On March 9, 2023, Plaintiff filed this action on his behalf and on behalf of a nationwide class or a California subclass alleging eight causes of action, including breach of warranty claims.  (See generally Compl.)

**B.      LG's Motion to Compel Arbitration**[1]

On May 24, 2023, LG moved to compel arbitration of Plaintiff's individual claims and stay proceedings in this action.  (Def.'s Mot. to Compel Arb. ("Mot."), ECF No. 10.)  LG maintains the entirety of Plaintiff's claims are subject to a valid arbitration agreement.  In support of its motion, LG submits a declaration from William Kwon, the senior manager of product management at LG, which discusses the packaging of LG refrigerators.  (Decl. William Kwon Supp. Def.'s Mot. ("Kwon Decl."), ECF No. 9-2.)

Mr. Kwon states an owner's manual ("Manual") has been customarily packaged inside every Refrigerator sold since early 2018.  (Kwon Decl. ¶ 3.)  Mr. Kwon also contends that the Manual has been available to customers on LG's website since early 2018.  (Id. ¶ 5.)  The first page of the sixty-four-page Manual advises consumers to "[r]ead this owner's manual thoroughly before operating the appliance and keep it handy for reference at all times." (Kwon Decl. Ex. A,

---

[1] On May 24, 2023, LG also filed a motion to dismiss each of Plaintiff's claims should the Court deny LG's motion to compel arbitration.  (ECF No. 10.)  However, for reasons discussed herein, the Court recommends holding LG's motion to compel in abeyance.  See Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 672 (9th Cir. 2021) ("[O]nce a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved.").  Because LG's motion to dismiss will be deemed moot if the Court grants LG's motion to compel, the Court recommends also holding LG's motion to dismiss in abeyance pending the bench trial or evidentiary hearing.  The Court will therefore not address the legal standards or substantive arguments associated with LG's motion to dismiss in these findings and recommendations.

ECF No. 9-3 at 2.) [2]  On the second page of the Manual, consumers are directed by a table of contents to the Limited Warranty, which begins on page fifty-five.  (Id. at 2.)  The first paragraph ("Arbitration Notice") of the Limited Warranty states:

> **ARBITRATION NOTICE: THIS LIMITED WARRANTY CONTAINS AN ARBITRATION PROVISION THAT REQUIRES YOU AND LG ELECTRONICS ("LG") TO RESOLVE DISPUTES BY BINDING ARBITRATION INSTEAD OF IN COURT, UNLESS YOU CHOOSE TO OPT OUT. IN ARBITRATION, CLASS ACTIONS AND JURY TRIALS ARE NOT PERMITTED. PLEASE SEE THE SECTION TITLED "PROCEDURE FOR RESOLVING DISPUTES" BELOW.**

(Id. at 56 (emphasis in original).)   LG's warranties pertaining to the Refrigerator are subsequently detailed between the Arbitration Notice and a section entitled "Procedure for Resolving Disputes" located on the same page beneath the warranties.  (Id. at 56-57.)

The section entitled "Procedure for Resolving Disputes" begins with the arbitration provision at issue ("Arbitration Provision"), which states:

> ALL DISPUTES BETWEEN YOU AND LG ARISING OUT OF OR RELATING IN ANY WAY TO THIS LIMITED WARRANTY OR THE PRODUCT SHALL BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION, AND NOT IN A COURT OF GENERAL JURISDICTION. BINDING ARBITRATION MEANS THAT YOU AND LG ARE EACH WAIVING THE RIGHT TO A JURY TRIAL AND TO BRING OR PARTICIPATE IN A CLASS ACTION.

(Id. at 57.)  The next two pages detail LG's dispute resolution procedure including, inter alia, an opt out provision:

> **Opt Out.** You may opt out of this dispute resolution procedure. If you opt out, neither you nor LG can require the other to participate in an arbitration proceeding. To opt out, you must send notice to LG no later than 30 calendar days from the date of the first consumer purchaser's purchase of the product by either (i) sending an e-mail to optout@lge.com, with the subject line: "Arbitration Opt Out;" or (ii) calling 1-800-980-2973.
>
> Opting out of this dispute resolution procedure will not affect the coverage of the Limited Warranty in any way, and you will continue to enjoy the full benefits of the Limited Warranty. *If you*

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

> *keep this product* and do not opt out, then you accept all terms and conditions of the arbitration provision described above.

(Id. at 57-59 (emphasis added).)  Mr. Kwon asserts that LG customarily maintains records of all customers who opt out of the dispute resolution procedure and a diligent search of LG's records confirmed that Plaintiff did not opt out of the Arbitration Provision.  (Kwon Decl. ¶ 15.)

Also attached to Mr. Kwon's declaration is "a true and correct copy of LG's Manufacturer's Limited Warranty Summary" for the Refrigerator, which is a copy of the standalone four-page Limited Warranty ("Summary") that is available online on the product page for the Refrigerator.  (Id. ¶ 21.)  Mr. Kwon does not proffer any declaration regarding whether the Summary was available on LG's product webpage for the Refrigerator prior to Plaintiff's Refrigerator purchase in September 2021.

Mr. Kwon also declared that since 2018, an arbitration notice ("Arbitration Sticker") has been customarily printed on piece of paper and taped to a shelf inside each plastic-wrapped Refrigerator, which states in three separate languages:

> *By using this product*, you agree that all disputes between you and LG arising out of or relating in any way to this product (including but not limited to warranty disputes) shall be resolved exclusively through binding arbitration on an individual basis. The terms of the arbitration agreement (including details on the procedure for resolving disputes) is available at www.lg.com/us/arbitration (USA)... and/or your owner's manual or warranty.

(Kwon Decl. ¶¶ 16-18 (emphasis added).)  Mr. Kwon provided three photographs which depict the Arbitration Sticker's content and location inside the Refrigerator's packaging.  (Id. at 6-8.)

In its motion, LG argues that the physically packaged documents put Plaintiff on notice that retaining and using his refrigerator constituted an agreement to arbitrate.  (Mot. 11.)  LG also relies on Plaintiff's unverified allegation that he "relied on the existence and length of the express warranties in deciding whether to purchase the refrigerator" as evidence he had notice of the Arbitration Provision.  (See, e.g., Mot. 12.)  LG avers Plaintiff's notice of the Arbitration Provision and his subsequent decisions to retain his refrigerator, seek warranty service, and not opt out of the Arbitration Provision demonstrate a clear and unambiguous agreement to arbitrate the instant dispute.  (Mot. 11.)  LG also argues Plaintiff is equitably estopped from denying the

1   validity of the Arbitration Provision because he sought and received warranty service under the

2   Limited Warranty.  (Mot. 19.)

3          **C.      Plaintiff's Opposition**

4          On July 24, 2023, Plaintiff filed his opposition to LG's motion to compel arbitration.

5   (Pl.'s Opp'n Mot. Compel ("Opp'n"), ECF No. 16.)   Plaintiff submitted no declarations to

6   support his opposition and did not file any objections to Mr. Kwon's declaration or supporting

7   exhibits.  Plaintiff filed a request for judicial notice of snapshot of the Home Depot return policy

8   that was in place when Plaintiff purchased his Refrigerator in September 2021.  (ECF No. 17.)

9          In his opposition, Plaintiff argues that he did not enter an arbitration agreement with LG

10  because LG did not provide him with reasonable notice of its arbitration provision.  Plaintiff

11  primarily relies on his allegations in his unverified complaint that he "never saw, agreed,

12  assented, or consented to any agreements by LG prior to or at the time of purchase" and that he

13  reasonably expected that the Refrigerator "was accompanied by a manufacturer's warranty of at

14  least a year in duration but did not confirm his expectation or review the warranty manual prior

15  to or at any time after purchase."  (Opp'n 12.)  Plaintiff also relies on his allegation that he never

16  received physical copies of the Arbitration Sticker or Manual because Home Depot removed the

17  packaging during installation and delivery.  Plaintiff therefore avers he had no notice of the

18  existence of the Arbitration Provision.  (Id. at 10.)  Further, Plaintiff avers in his unverified

19  briefing that he was unaware that using his Refrigerator constituted acceptance of the Arbitration

20  Provision.  Plaintiff never addresses in his opposition his allegation that he "relied on the

21  existence and length of the express warranties in deciding whether to purchase the refrigerator."

22  (Compl. ¶ 115.)  Plaintiff alternatively argues that if this Court finds Plaintiff and LG agreed to

23  arbitrate, LG's Arbitration Provision is unenforceable as a matter of law because (1) it restricts

24  Plaintiff's right to seek public relief in any forum pursuant to McGill v. Citibank, N.A., 2 Cal.

25  5th 945 (2017) and (2) is unconscionable.[3]

26  _____
[3] Because the Court cannot determine on this record that the parties agreed to arbitrate, the Court does not analyze
27  Plaintiff's alternative claims in the instant findings and recommendations.  However, the Court notes that another
    court in this district has recently addressed these claims against the same Arbitration Provision and determined (1)
28  application of the McGill rule does not invalidate the arbitration provision (2) the arbitration provision is not
    procedurally or substantively unconscionable.  Wheeler v. LG Electronics USA, Inc., No. 1:22-cv-00459-NODJ-

1  **C.     LG's Reply**

2      On August 23, 2023, LG filed a reply to Plaintiff's opposition to LG's motion to compel

3  arbitration.  (Def.'s Reply ("Reply"), ECF No. 21.)  LG does not directly oppose Plaintiff's

4  request for judicial notice of Home Depot's September 2021 return policy; rather, LG avers it is

5  irrelevant.  (Reply 10.)  LG argues that by delegating the delivery and installation of his

6  Refrigerator to Home Depot personnel, Plaintiff authorized Home Depot to represent him in the

7  delivery and installation of his Refrigerator.  (Id. at 8.)  LG therefore avers Plaintiff had

8  constructive notice of the Arbitration Provision even if the packaging was removed.  In both its

9  motion and reply, LG repeatedly underscores Plaintiff's allegation contained in paragraph 115

10  that he relied on the warranties prior to purchasing the Refrigerator to also show he had notice of

11  the Arbitration Provision.

12      **D.     The Non-Evidentiary Hearing**

13      On October 4, 2023, the Court held a non-evidentiary hearing in this matter.  (ECF No.

14  29.)  Hunter Bryson appeared via video on behalf of Plaintiff and Vassiliki Iliadis, Phoebe

15  Wilkinson, and Samuel Zimmerman appeared on behalf of LG.

16      Relevant to the instant findings and recommendations, the Court requested clarification

17  from Plaintiff regarding the contradictory allegations pleaded in the unverified complaint.  It was

18  argued Plaintiff "didn't have any notice" of the Limited Warranty (Transcript ("Tr."), ECF No.

19  31 at 22:5-6), arguing "the whole warranty that [Plaintiff] relied upon was from the

20  website…that's where his warranty derives from and that's what he contended."  (Tr. 29:2-5,

21  30:4-6.)  Plaintiff further argued "the warranty stemmed from the website. [LG was] very

22  specific on what was provided, and that's what we relied upon there, and…that was the basis of

23  [Plaintiff's] claim."  (Tr. 29:14-17.)  However, Plaintiff also recapitulated that Plaintiff "didn't

24  know there was a limited warranty at the beginning of the case. He didn't know there was a

25  limited warranty when he called [LG] multiple times. He assumed there was a warranty."  (Tr.

26  30:12-15.)  "Assuming there's a warranty, [Plaintiff] called LG" and asked them to fix his Craft

27  

28  BAM, 2024 WL 51353, at *10-13 (E.D. Cal. Jan. 4, 2024).  These conclusions regarding an identical Arbitration
Provision are well-taken should it be determined that Plaintiff agreed to arbitrate his claims.

Ice Maker; however, Plaintiff "didn't have knowledge of inner workings of the entire warranty." (Tr. 20:10-12, 23:1-2.)  Also emphasized was Plaintiff's contention that he "never even saw" the notices of the Arbitration Provision purportedly packaged with the Refrigerator because they were "ripped out" by Home Depot.  (Tr. 22:11-17.)  The Court took the matter under submission. ///

### E.   Supplemental Briefing

On January 8, 2024, LG filed a notice of supplemental authority, notifying the Court of a recent order by a court in this district granting a motion to compel arbitration in <u>Wheeler v. LG Electronics USA, Inc.</u>, No. 1:22-cv-00459 NODJ BAM, 2024 WL 51353 (E.D. Cal. Jan. 4, 2024).  (ECF No. 34.)  In short, an identical Arbitration Sticker was included on both the inside and outside of the LG dishwasher's packaging and an owner's manual with an identical Arbitration Notice and Arbitration Provision was packaged with the refrigerator and located online.  <u>Wheeler</u>, 2024 WL 51353 at *1-2.  Further, the <u>Wheeler</u> plaintiff's complaint identically alleged that he "relied on the existence and length of the express warranties in deciding whether to purchase the" dishwasher.  <u>Id.</u> at 10.  However, the complaint in <u>Wheeler</u> did not contain similar allegations that delivery personnel removed the packaging or that the plaintiff never saw, agreed, assented, or consented to any agreements by LG.

On January 24, 2024, Plaintiff filed a response to LG's notice of supplemental authority without leave of Court, noting factual discrepancies of the facts surrounding the purchase, delivery, and installation of Plaintiff's Refrigerator differ considerably from the facts presented in <u>Wheeler</u>.  (ECF No. 35.)  On January 29, 2024, LG sought leave from the Court to file a reply to Plaintiff's response.  (ECF No. 36.)  The Court granted LG's request.  (ECF No. 37.)  On February 7, 2024, LG filed a response to Plaintiff's arguments and underscoring similarities between <u>Wheeler</u> and the instant action.  (ECF No. 38.)

## II.

## LEGAL STANDARD APPLICABLE TO MOTION TO COMPEL ARBITRATION

The district court's role under the Federal Arbitration Act ("FAA") in deciding whether a dispute is arbitrable, is "limited to determining (1) whether a valid agreement to arbitrate exists;

and if it does (2) whether the agreement encompasses the dispute at issue." <u>Chiron Corp. v. Ortho Diagnostic Sys.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000). If the party seeking to compel arbitration establishes these two factors, then the court must compel arbitration. <u>Id.</u>; <u>see also</u> <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). "Although there is generally a presumption in favor of arbitration, 'the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.' " <u>Winkler v. McCloskey</u>, 83 F.4th 720, 728-29 (9th Cir. 2023) (quoting <u>Johnson v. Walmart Inc.</u>, 57 F.4th 677, 680-81 (9th Cir. 2023)).

In resolving a motion to compel arbitration, the district court must apply the summary judgment standard outlined in Federal Rule of Civil Procedure 56. <u>Hansen v. LMB Mortg. Servs., Inc.</u>, 1 F.4th 667, 670 (9th Cir. 2021). The moving party bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." <u>Norcia v. Samsung Telecomms. Am., LLC</u>, 845 F.3d 1279, 1283 (9th Cir. 2017) (quotations and citations omitted). When considering a motion to compel arbitration "which is opposed on the ground that no agreement to arbitrate was made, a district court should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." <u>Concat LP v. Unilever, PLC</u>, 350 F. Supp. 2d 796, 804 (N.D. Cal. Sept. 7, 2004).

### III.

### DISCUSSION

LG moves to compel arbitration, asserting that Plaintiff agreed to arbitrate this dispute. Plaintiff contends he did not consent to any arbitration agreement.[4] "The 'first principle' of a court's arbitration decision is that '[a]rbitration is strictly a matter of consent...and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to

---

[4] The parties agree California law governs. (Mot. 11-12; Opp'n 9 n.1.) The essential elements of a valid contract under California law are: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. <u>Norcia</u>, 845 F.3d at 1284 (quoting Cal. Civ. Code § 1550). Plaintiff only challenges the existence of the element of consent.

1   arbitration.' " Johnson, 57 F.4th at 681 (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters,

2   561 U.S. 287, 299 (2010)) (emphasis omitted).  As "arbitration is a matter of contract[,]...a party

3   cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id.

4   (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)).

5          Here, the parties agree that in determining whether a valid agreement to arbitrate exists,

6   the Court "must determine whether a reasonable person in [] Plaintiff's position would have

7   known about the arbitration provision and known that using the [product] constituted acceptance

8   of that provision."   In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig. ("In re

9   Samsung"), 298 F. Supp. 3d 1285, 1293 (N.D. Cal. 2018) (citing Knutson v. Sirius XM Radio

10  Inc., 771 F.3d 559, 566 (9th Cir. 2014)).

11         **A.     Existence of an Arbitration Agreement**

12         Plaintiff asserts that LG did not provide any notice of its Arbitration Provision, and he

13  was therefore unaware that using the Refrigerator constituted acceptance of the Arbitration

14  Provision.  (Opp'n. 6.)  LG proffers evidence that both the Arbitration Sticker and Manual have

15  been customarily packaged with its refrigerators since early 2018.   (Kwon Decl. ¶¶ 3, 16.)

16  Plaintiff does not dispute this evidence.  Rather, Plaintiff repeats his allegation contained in his

17  unverified complaint:  Home Depot delivery personnel "removed all internal packaging and any

18  stickers LG placed inside the refrigerator during the installation process."  (Compl ¶ 19.)  Thus,

19  through his unverified complaint and unsupported briefing, Plaintiff contends he did not have

20  "any notice"—actual or constructive—of the physically packaged Arbitration Sticker or Manual

21  containing the Limited Warranty with the Arbitration Provision.  LG notes it "does not concede

22  the facts in Plaintiff's Complaint, which would not be subject to resolution under the FAA."

23  (Reply 8 n.3.)  LG also avers "Plaintiff has not raised any disputed issue of material fact as to

24  constructive notice – which dooms his effort to avoid arbitration."  (Id.)

25         The Court agrees Plaintiff has failed to proffer anything other than attorney argument and

26  allegations in an unverified complaint to deny the existence of an agreement to arbitrate.

27  Plaintiff submits no declaration of his own that supports his allegations that Home Depot

28  removed the packaging during installation or that he otherwise had no notice of the Limited

Warranty, Manual, and Arbitration Sticker.

While the parties agree LG, as the party seeking to compel arbitration, bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence, neither party addresses the motion for summary judgment standard of review.  Hansen, 1 F.4th 667, 670 (finding that on a motion to compel arbitration, "[t]he summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate") (quotations and citation omitted).  Under this standard, "[t]he party opposing arbitration receives the benefit of any reasonable doubts and the court draws reasonable inferences in that party's favor, and only when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration."  Smith v. H.F.D. No. 55, Inc., No. 2:15-cv-01293 KJM KJN, 2016 WL 881134, at *4 (E.D. Cal. Mar. 8, 2016).

Allegations in an unverified complaint and statements in an opposition have no evidentiary value when determining a typical motion for summary judgment.  See Moran v. Selig, 447 F.3d 748, 759–60 (9th Cir. 2006) (noting an unverified complaint cannot be considered as evidence at the summary judgment stage and opposition and reply briefs are similarly not verified and therefore have no evidentiary value).  However, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court has discretion to give the party an opportunity to properly support the fact, consider the fact undisputed for purposes of the motion, grant summary judgment if motion shows the movant is entitled to it, or "issue any other appropriate order." Fed. R. Civ. P. 56(e)(1)-(4).

Despite the lack of a supporting declaration, Plaintiff has maintained in his unverified complaint, throughout his briefing, and at the non-evidentiary hearing that Home Depot removed any packaging containing any notices by LG.  If Plaintiff had proffered a supporting declaration asserting the same, the Court finds a genuine dispute of material fact would be at issue as to whether Plaintiff had constructive notice of the Arbitration Provision and that using his Refrigerator constituted assent to arbitrate his claims.  Cf. Maharaj v. Charter Commc'ns, Inc.,

1  No. 20-CV-00064 BAS LL, 2021 WL 5014352, at *6 (S.D. Cal. Oct. 27, 2021) (where a plaintiff

2  only argues in an opposition that the defendant never provided him an opportunity to opt out of

3  an arbitration agreement, the Court looked further and determined that "[e]ven if the Court were

4  to excuse the lack of evidence, Plaintiff's argument must still fail"); Berbig v. U-Haul of

5  Arizona, No. 2:21-CV-00249 BLW, 2023 WL 2275540, at *3 (D. Idaho Feb. 28, 2023) (finding

6  the plaintiff failed to present evidence supporting his claim that he did not receive a copy of an

7  addendum to an arbitration agreement after he signed it, but further noted that "even if [plaintiff]

8  *had* submitted such a declaration, it wouldn't matter") (emphasis in original).

9       The Court also notes that LG's own argument in favor of arbitration heavily relies on

10  Plaintiff's allegation contained in paragraph 115 of his unverified complaint, which states that

11  Plaintiff "relied on the existence and length of the express warranties in deciding whether to

12  purchase" the Refrigerator.  LG repeatedly argues that Plaintiff has conceded, by way of an

13  unverified complaint, pre-purchase awareness of and reliance on the Limited Warranty

14  containing the Arbitration Provision.  LG's own argument requests that this Court find Plaintiff

15  had constructive notice of the Arbitration Provision, or alternatively, is equitably estopped from

16  denying the validity of the Arbitration Provision based upon the unverified allegation.[5]

17  However, as stated, Plaintiff's unverified allegation is not evidence.  See Moran, 447 F.3d at 759;

18  Arik v. Meyers, No. 2:19-CV-01908 JAD NJK, 2020 WL 4331530, at *5 (D. Nev. July 24,

19  2020) (informing the defendant that an unverified allegation is not evidence when it pointed to

20  the plaintiff's unverified complaint where the plaintiff alleged he recalled signing an agreement

21  that contained an arbitration clause as evidence that an arbitration agreement existed).

22       Needlessly compounding this Court's analysis is Plaintiff's seemingly contradictory

23  allegations in his unverified complaint that preclude the Court from accepting paragraph 115 as

24  an undisputed fact.  In paragraph 21 of the complaint, Plaintiff alleges he had no notice of the

25  "warranty manual" prior to or at any time after purchase and only "reasonably expected his

---

[5] "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." Allen v. Shutterfly, Inc., 2020 WL 5517172, at *8 (N.D. Cal. Sept. 14, 2020) (citation omitted).  A plaintiff must have notice of the contract in which he is attempting to enforce.  Given notice is at issue here, the Court cannot find Plaintiff should be equitably estopped from denying the existence of the Arbitration Provision.

refrigerator, like any appliance, was accompanied by a manufacturer's warranty of at least a year in duration but did not confirm his expectation…"  Plaintiff repeatedly cites this unverified allegation and LG never addresses it.  In turn, in paragraph 115, Plaintiff appears to allege he had notice of and actually relied on unspecified "express warranties" *prior* to purchasing the Refrigerator.  LG repeatedly cites this unverified allegation as support for this Court to compel arbitration and Plaintiff fails to explain it in opposition.

The Court agrees with LG that Plaintiff need not have reviewed the Limited Warranty to be bound by it.  Indeed, given the warranties are couched between the bold, capitalized Arbitration Notice and the Arbitration Provision itself, any reliance on the length and existence of the express warranties in the Limited Warranty would necessarily mean Plaintiff had constructive notice—if not actual notice—of the Arbitration Provision located on the same page.  However, it is impossible to tell from the record what "express warranties" Plaintiff relied upon prior to purchasing the Refrigerator if he did allegedly not rely on those contained within the Manual.  (Compare Compl. ¶ 115 with Compl. ¶ 21.)  Plaintiff alleges in his unverified complaint and repeats in his briefing that he never reviewed the "warranty *manual*" (Compl. ¶ 21) or "the Owner's *Manual or its warranty provisions* prior to purchase" (Opp'n 12).  When this Court requested clarification at the non-evidentiary hearing, Plaintiff did not clarify the seemingly contradictory allegations; rather, he confirmed Plaintiff was unaware of a Limited Warranty, and only assumed there was a warranty.  However, Plaintiff asserted "the warranty stemmed from the website. [LG was] very specific on what was provided, and that's what we relied upon there, and…that was the basis of [Plaintiff's] claim."  (Tr. 29:14-17.)  Even if Plaintiff's arguments or Plaintiff's unverified allegations had evidentiary value, the Court is still unable to tell what warranties Plaintiff purportedly relied on prior to purchasing the Refrigerator—and if they were bookended by the Arbitration Notice and Arbitration Provision— given the inconsistencies alleged in his unverified complaint.

Given Plaintiff's argument that he did not rely on the express warranties contained within the sixty-four-page Manual and only relied on unspecified warranties located online, the Court turns to the evidence proffered by LG to determine whether LG proffered any other warranties

1   online outside the Manual that were accessible to Plaintiff prior to purchasing the refrigerator in

2   September 2021.  Notably, the last paragraph of Mr. Kwon's declaration notes it has linked and

3   attached a copy of the Summary.  (Kwon Decl. ¶ 21.)  This is not a "Manual," which is the type

4   of document Plaintiff expressly maintains in his unverified complaint and briefing he never

5   reviewed (Compl. ¶ 21); it contains LG's "very specific" warranties (Tr. 29:15); and Mr. Kwon

6   declares it is available online (Kwon Decl. ¶ 21).  However, LG fails to offer any evidence

7   whether, like the Manual, the Summary was located online prior to Plaintiff's purchase of the

8   refrigerator in September 2021.  The Court therefore cannot resolve what warranties outside the

9   "warrant manual" Plaintiff relied upon prior to purchase on the record before it.

10      Notably, even if the Court found Plaintiff relied on—i.e., had notice of—the Summary

11  located online prior to purchasing the Refrigerator, the Arbitration Provision located on the same

12  page as the express warranties does not include a provision expressly informing the consumer

13  that "by *using* the product," he agrees to all disputes shall be resolved through arbitration.  In re

14  Samsung, 298 F. Supp. 3d at 1293 (courts "must determine whether a reasonable person in []

15  Plaintiff's position would have known about the arbitration provision *and known that using the*

16  *[product] constituted acceptance of that provision*") (emphasis added).  Rather, the Arbitration

17  Provision which LG contends was in effect at the time Plaintiff purchased his Refrigerator

18  informs the consumer on the last line of the Provision that "[i]f you *keep* this product and do not

19  opt out, then you accept all terms and conditions of the arbitration provision…."  (ECF No. 9-3

20  at 59.)  LG does not proffer argument that such language is sufficient independent of the

21  Arbitration Sticker, which Plaintiff contends was removed by Home Depot during the delivery

22  and installation process.

23      In supplemental argument following the non-evidentiary hearing, Plaintiff addressed

24  paragraph 115 for the first time; however, he does not clarify the material issue of notice.

25  Instead, he simply restates the allegations from his unverified complaint in a single sentence:

26  "Although Plaintiff…relied on the existence and length of the express warranties in deciding

27  whether to purchase the Class Refrigerators [*sic*] (Compl. ¶ 115), he neither obtained nor

28  reviewed the Owner's Manual or its warranty provisions prior to purchase, or any other notices

purportedly displayed within the refrigerator prior to accepting delivery. (Compl. ¶ 21.)"  (ECF No. 35 at 3.)  This is neither evidence nor does it enlighten the Court as to which warranties Plaintiff purports to have relied upon.  The Court's task in determining whether Plaintiff had actual or constructive knowledge of the Arbitration Provision contained in the Limited Warranty is thus compounded by a conflict produced entirely by Plaintiff in his unverified complaint.  It is well-established that a Court cannot determine credibility when ruling on a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, such standard is typically applied when competing declarations are at issue, not splicing through an unverified complaint that has no evidentiary value. See, e.g., Fuqua v. Kenan Advantage Grp., Inc., 3:11–CV–01463 ST, 2012 WL 2861613 (D. Or. Apr. 13, 2012) (finding "a credibility issue that cannot be resolved based on competing affidavits. Therefore, prior to resolving [the] motion, an evidentiary hearing must be held to determine whether a valid Arbitration Agreement exists.").  Given the contradictory allegations contained in paragraphs 21 and 115 of the unverified complaint are not evidence and seemingly dispute each other, the Court finds neither can be deemed undisputed for purposes of these findings and recommendations.

The Court finds an evidentiary hearing or summary trial would be the most useful in clarifying the issue regarding whether the parties entered an agreement to arbitrate, and specifically whether Plaintiff had constructive notice of the Arbitration Provision.  Construing the allegations in the complaint in Plaintiff's favor that are not directly contravened by record evidence put forward by LG, Home Depot delivery personnel purportedly removed the packaged Arbitration Sticker and Manual during delivery and installation.[6]  (Compl. ¶¶ 18-20.)  The parties dispute two primary issues regarding whether Plaintiff should be found to have constructive notice of the packaged Arbitration Sticker and Manual, which the Court addresses in turn.

1. Whether Plaintiff should be treated as though he received the Refrigerator packaging

---

[6] The Ninth Circuit has "confirmed that the FAA's procedure mirrors the three phases of federal civil lawsuits: a motion to compel arbitration akin to a motion to dismiss; followed by optional discovery before summary judgment, if the motion is denied; followed by a mini-trial, if necessary." Knapke v. PeopleConnect, Inc., 38 F.4th 824, 833 (2022) (citing Hansen, 1 F.4th at 670).

LG argues the conspicuous placement of the Arbitration Sticker taped to the inside of the Refrigerator and the prominence of the Arbitration Provision within the Limited Warranty located in the packaged Manual put Plaintiff on notice that using his refrigerator would constitute an agreement to arbitrate. (Mot. 12.)  The Arbitration Sticker begins by expressly stating: "[b]y using this product, you agree that all disputes…shall be resolved exclusively through binding arbitration on an individual basis…," then directs consumers that "the terms of the arbitration agreement" are available online and in the Manual or Warranty.  (Kwon Decl. at 5-8.)  A physical copy of the Manual containing the Arbitration Provision is also customarily packaged with the Refrigerator.   (Id. at ¶ 3.)   LG therefore argues the numerous references to the Arbitration Provision in the Refrigerator's packaging demonstrates that Plaintiff had reasonable notice of the Arbitration Provision.  (Mot. 15.)[7]

In response, Plaintiff does not dispute LG's customary packaging; rather, Plaintiff maintains that in the process of delivering Plaintiff's Refrigerator, Home Depot employees removed the Refrigerator from its packaging and disposed of all internal packaging, notices, and stickers prior to Plaintiff taking possession of and using his Refrigerator.  (Opp'n 6, 10 (citing Compl. ¶¶ 19-20).)  Thus, Plaintiff maintains he did not observe any stickers or other notices inside or outside his Refrigerator that provided notice of LG's arbitration provision.   (Id.)  Accordingly, Plaintiff argues he cannot be held to have assented to arbitrate his claims because he did not have notice of the Arbitration Provision.

In supplemental briefing, LG argues "a person who voluntarily declines to take with him a box containing important materials relating to the product he purchased must be treated as

---

[7] Other Courts have agreed LG's identically packaged Arbitration Stickers and Owner's Manuals provide sufficient notice of the Arbitration Provision and that using the product constitutes acceptance to the Provision.  See, e.g., Brito v. LG Electronics USA, Inc., 22-5777, 2023 WL 2675132 (D.N.J. Mar. 29, 2023) (finding Plaintiff had notice of the same LG Arbitration Sticker attached to his LG product and the plaintiff was also made aware of the limited warranty containing the arbitration provision by a sales associate prior to his purchase); Wheeler, 2024 WL 51353, at *9 (finding that prior to using their LG product, a reasonable purchaser would likely view the Arbitration Sticker on the inside of the packaging because it is physically taped over installation information and, even if the purchaser never followed the reference to read the complete Arbitration Provision appearing online or in the Owner's Manual, the court found they would still have notice that "[b]y using this product, you agree that all disputes between you and LG arising out of or relating in any way to this product (including but not limited to warranty disputes) shall be resolved exclusively through binding arbitration on an individual basis.").  However, the plaintiffs in neither of these cases raised the issue of third-party disposal of the packaging prior to taking possession of the product.

though he received the box."  Norcia v. Samsung Telecommunications Am., LLC, No. 14-CV-00582 JD, 2014 WL 4652332 (N.D. Cal. Sept. 18, 2014), aff'd, 845 F.3d 1279 (9th Cir. 2017). LG avers "[t]he same is true for Plaintiff Henenfent here."  (ECF No. 38 at 3.)  The Court construes LG's argument to dispute whether Plaintiff declined the packaging and its contents, or otherwise voluntarily allowed Home Depot to dispose of the Refrigerator's packaging.  LG's argument is well-taken; however, the Court cannot tell on the papers whether Plaintiff should be treated as though he received the contents of the Refrigerator's packaging, including the Arbitration Sticker and the Manual.

The Court notes the district court in Norcia was presented with an identical factual twist involving third-party product set-up and disposal of a packaged arbitration provision.  Therein, a plaintiff purchased a phone from a Verizon Wireless store and a Verizon employee opened and unpacked the box and set up the device.  Id. at *2. A brochure that included an arbitration provision contained within the warranty was packaged inside the box.  Id.  However, the plaintiff left the store without the packaging.  Id.  When the plaintiff ultimately sued Samsung, Samsung filed a motion to compel arbitration arguing that because the plaintiff failed to opt out, he had manifested his assent to be bound by the arbitration provision.  Id.  In response, the plaintiff argued that he did not assent to the arbitration agreement because he "did not receive the arbitration terms Samsung now seeks to enforce."  Id.  Samsung argued in reply that the plaintiff's lack of receipt was due to plaintiff voluntarily leaving the box behind at the store.  Id. at *5.  Unable to resolve the dispute on the papers, the district court held a bench trial.  Id.

Finding plaintiff "voluntarily decline[d] the box," the district court determined that the plaintiff "must be treated as if he received the box (and the materials in it)."  Id.  The district court noted that "[c]ompetent adults are bound by…documents, read or unread."  Id. at *6 (quotations and citations omitted).  Thus, the court found that "[d]eclining to read a contract in hand is analytically indistinguishable from declining to take a copy of the contract in the first place, and the legal effect of holding the person accountable should be the same."  Id.  Despite the Verizon employee's retention of the box and packet containing the arbitration provision, the district court treated the plaintiff as though he received the box because the facts clearly evinced

1  the plaintiff voluntarily refused to accept the box and its contents.

2       Like the district court in <u>Norcia</u>, "it is impossible to tell from the papers" whether

3  Plaintiff received—or should be found to have received—the Refrigerator's packaging allegedly

4  disposed of by Home Depot delivery personnel such that he had constructive notice of the

5  Arbitration Sticker and Owner's Manual containing the Arbitration Provision.  Accordingly, the

6  Court recommends holding a summary trial or equivalent evidentiary proceeding to resolve the

7  factual dispute.

8            2.      <u>Whether Home Depot's knowledge of the arbitration provision should be imputed
             to plaintiff</u>
9

10      LG argues that because Plaintiff "allegedly entrusted delivery and installation of his

11  refrigerator to a third party," Plaintiff indicated he authorized Home Depot's delivery service

12  installation personnel to represent him.  (Reply 8.)  In support, LG relies on a decision from a

13  court in this district which determined that a contractor's knowledge of an arbitration provision

14  on product packaging was imputed to homeowners, despite their similar assertion that they never

15  saw the provision.  (Reply 8; ECF No. 38 a 3 (citing <u>Hoekman v. Tamko Building Products, Inc.</u>,

16  No. 2:14-cv-01581 TLN KJN, 2015 WL 9591471 (E.D. Cal. Aug. 26, 2015)).)[8]

17      In <u>Hoekman</u>, an arbitration clause was printed on the packaging of roof shingles.  <u>Id.</u> at

18  *3.  Because the shingles were delivered directly to the plaintiffs' contractor, the plaintiffs

19  argued they never saw nor agreed to any arbitration clause.  <u>Id.</u> at *1.  The district court

20  disagreed, finding the arbitration agreement enforceable because, *inter alia*, the contractor was

21  "acting as an agent for Plaintiffs," and the contractor's actual knowledge of the arbitration

22  agreement was imputed to the plaintiffs.  <u>Id.</u> at *6.  To reach this finding, the district court noted

23  "the lack of detail in the pleadings" but "infer[red] from the Complaint that [the contractor] was

24  working directly for and on behalf of Plaintiffs when it received, opened, and installed the

25  roofing tiles."  <u>Id.</u>  The court noted that the "Plaintiffs indicated that they intended the shingles

26

27  ─────────────
    [8] Notably, the district court in <u>Hoekman</u> also determined that the purchasers knew or should have known of the
28  arbitration agreement based on their comparison shopping and reliance on advertising and marketing material that
    referenced the limited warranty for the shingles.  <u>Hoekman</u>, 2015 WL 9591471 at *3-4, 7.

be delivered directly into the care of [the contractor]." Id.  Therefore, "[b]y entrusting the receipt and installation of the shingles to [the contractor], Plaintiffs indicated that they were authorizing their contractor to represent them in their receipt of the shingles from [the defendant shingle manufacturer]."  Id.  The court therefore found sufficient evidence "to establish implied agency between Plaintiffs and their contractors."  Id. The court determined an agreement was established between the defendant and the contractor when the packaged products were delivered, and the plaintiffs were bound by that agreement through implied agency.  Id.

Here, LG does not expressly aver that Home Depot and Plaintiff have an implied agency relationship.  However, LG repeatedly analogizes the relationship between Plaintiff and Home Depot delivery personnel to the Hoekman contractor-homeowner relationship.  (Reply 8; ECF No. 38 at 3.)  Further, when Plaintiff argued in supplemental briefing that "Home Depot was not an agent of Plaintiff authorized to accept delivery of the Class Refrigerator from LG" (ECF No. 35 at 3 n.3), LG averred such a statement "is not supported by any fact declaration or legal authority and therefore should be given no weight" (ECF No. 38 at 3).  The Court therefore construes LG's argument as asserting that Home Depot was acting as an agent for Plaintiff, akin to the Hoekman contractor acting as an agent for the homeowner plaintiffs.  As the party asserting that an agency relationship exists, LG has the burden of establishing its existence.  See Restatement (Third) of Agency § 1.02 (2006) cmt. d.

As a threshold matter, the Hoekman contractor was acting in the course and scope of his employment with the homeowner plaintiffs.  The Court is hesitant to hold a similar implied agency relationship exists between a Home Depot customer and Home Depot delivery personnel. LG indicates that Plaintiff should be held to have constructive notice of the Arbitration Provision based on Home Depot delivery personnel's purported knowledge of the packaging because "Plaintiff allegedly entrusted delivery and installation of his refrigerator to a third party." (Compl. ¶¶ 18-20.)  However, in Hoekman, the complaint alleged plaintiffs or their contractor purchased the roofing *from the manufacturer* and the plaintiffs intended that *the manufacturer* deliver the product to the contractor to receive, open, and install the product.  Hoekman, 2015 WL 9591471 at *6.  Here, the unverified complaint alleges—and LG agrees in its motion—that

Plaintiff purchased the Refrigerator directly from Home Depot and Home Depot delivered and installed the Refrigerator in Plaintiff's home.  (Compl. ¶¶ 14, 18; Mot. 6.)  There is no evidence in this record that Home Depot purchased or otherwise accepted the Refrigerator from LG on Plaintiff's behalf.  Thus, as alleged in the unverified complaint, all of Plaintiff's "dealings" with respect to purchase, receipt, and installation of the Refrigerator were directly between Home Depot and Plaintiff.  See Hoekman, 2015 WL 9591471 at *6 (quoting Zimmerman v. Superior Court, 220 Cal. App. 4th 389, 401 (2013) ("An agent is one who represents another…in dealings with third persons.")  Unlike the inferences drawn from the Hoekman complaint, the Court cannot infer that Plaintiff "indicated [he was] authorizing [Home Depot] to represent [him] in [Home Depot's] receipt of the [Refrigerator] *from [LG]*."  See id. at *6 (emphasis added).  Further, the record does not allow a determination that Home Depot delivery personnel had authority to remove and dispose of the packaging on Plaintiff's behalf, particularly the Sticker located on the inside of the Refrigerator.   The scope of any agreement that Home Depot deliver and install the Refrigerator is not before this Court and Home Depot's corresponding authority within that scope is also unclear on this record.

"Agency may be implied based on conduct and circumstances."  Id.  However, "[b]ecause the existence of agency is generally a question of fact…agency must be established with evidence."  Id.  LG impliedly argues that Home Depot delivery personnel were acting as Plaintiff's agents and Plaintiff contends Home Depot was not Plaintiff's agent.  Accordingly, the Court finds a factual dispute exists as to whether Home Depot delivery personnel were acting as Plaintiff's agents.   Such issue is material in determining whether the delivery personnel's knowledge of the Arbitration Provision on the Refrigerator's packaging can be imputed to Plaintiff to support a finding he had constructive notice of the Arbitration Sticker and Arbitration Provision located within the Manual.

### B.   The Court Recommends Holding the Motions in Abeyance and Conducting a Bench Trial to Determine Whether a Valid Arbitration Agreement Exists

"[O]nce a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a

1  trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual

2  issues have been resolved."  Hansen, 1 F.4th at 672 (citing 9 U.S.C. § 4 ("If the making of the

3  arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court

4  shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to

5  be in default…the court shall hear and determine such issue.")).  As discussed, factual disputes

6  exist which must be resolved before the Court can adjudicate LG's motion to compel arbitration.

7       Because this Court cannot find Plaintiff had notice of the Arbitration Sticker, physical

8  Manual, or online LG Warranty—either within the Manual or the Summary—on the evidence

9  currently before the Court, it cannot find Plaintiff had constructive or actual notice of the

10  Arbitration Provision or that using the Refrigerator constituted acceptance of the Provision.  See

11  In re Samsung, 298 F. Supp. 3d at 1293.  However, the Court also cannot conclude as a matter of

12  law that no agreement to arbitrate exists between Plaintiff and LG.  See Oberstein v. Live Nation

13  Ent., Inc., 60 F.4th 505, 517 (9th Cir. 2023) ("Although mutual assent is generally a question of

14  fact, whether a certain set of facts is sufficient to establish a contract is a question of law").

15       Accordingly, the Court cannot determine whether an agreement to arbitrate exists

16  between the parties as a matter of law on the current record and recommends this case be set for

17  a summary trial under 9 U.S.C. § 4 or an equivalent evidentiary proceeding to determine the

18  issue of whether the parties entered into a valid arbitration agreement.  The Court recommends a

19  bench trial because Plaintiff's opposition does not request a jury trial regarding the arbitrability

20  issue.  (See generally Opp'n); Hansen, 1 F.4th at 670 ("The district court may decide the case in a

21  bench trial if the party opposing arbitration does not demand a jury trial ..."); Flores v. Point

22  Pickup Techs., Inc., No. 1:22-CV-00193 JLT SKO, 2023 WL 8295943, at *6 (E.D. Cal. Dec. 1,

23  2023) (ordering a bench trial for the arbitrarily issue because Plaintiff did not request a jury trial

24  in his opposition).  This Court has not found authority wherein a Magistrate Judge held a

25  summary trial pursuant to 9 U.S.C. § 4 without consent of the parties.  The Court therefore

26  recommends the issue proceed to summary trial before the assigned District Judge.[9]

27  _____

28  [9] The parties are reminded that Magistrate Judges are available to conduct case dispositive proceedings.  However, exercise of this jurisdiction by a Magistrate Judge is permitted only if all parties voluntarily consent.  To consent or decline to Magistrate Judge jurisdiction, a party may sign and file the consent form available on the Court's website,

## IV.

### CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendant's motion to compel arbitration and motion to dismiss be HELD IN ABEYANCE pending a summary trial before the assigned District Judge to determine whether Plaintiff[10] and Defendant formed an arbitration agreement.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **twenty-one (21) days** of service of these recommendations, the parties may file written objections to the findings and recommendations with the Court.   Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 26, 2024**

UNITED STATES MAGISTRATE JUDGE

---

at: http://www.caed.uscourts.gov/caednew/index.cfm/forms/civil/. Parties may consent, decline, or withhold consent without any adverse consequences, and the assigned Magistrate Judge will not be informed of the individual party's holding or withholding of consent.

[10] Given this is not yet a class action, this would be a trial only as to whether Plaintiff agreed to arbitrate his claims.

22